06-1103-cr
USA v. Amanuel

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

———————————————

August Term, 2007

(Argued: November 5, 2007

Decided: July 29, 2010)

Docket No. 06-1103-cr

———————————————

UNITED STATES OF AMERICA,

*Appellant,*

*-v.-*

RODRIQUE AMANUEL, DONALD MINNI, SCOTT DEMEYER,

*Defendants-Appellees.*

———————————————

BEFORE:         CABRANES, KATZMANN, HALL, *Circuit Judges.*

———————————————

Appellant United States appeals from the November 23, 2005, and February 1, 2006, decisions of the United States District Court for the Western District of New York (Siragusa, *J.*) granting the Defendants-Appellees' motion to suppress any and all evidence derived from a March 19, 2002, New York State digital pager intercept warrant. We hold that the failure to record electronically and to seal the recordings of electronic pager communications in accordance with 18 U.S.C. § 2518(8)(a) does not amount to a constitutional violation, and the limitations imposed by 18 U.S.C. § 2518(10)(c) preclude the suppression of the evidence derived from the pager interceptions; instead, pursuant to 18 U.S.C. § 2517(3), only the evidence of the intercepted electronic communications is excluded from disclosure at trial or other proceedings.

VACATED AND REMANDED.

———————————————

STEPHAN J. BACZYNSKI, Assistant United States Attorney (Terrance P. Flynn, United States Attorney for the Western District of New York, *on brief*), Buffalo, NY, *for Appellant*.

JOSEPH S. DAMELIO, ESQ., Rochester NY, *for Defendant-Appellee Rodrique Amanuel*.

BRUCE F. FREEMAN, Redmond & Parrinello, LLP (John R. Parrinello, *of counsel*), Rochester, NY, *for Defendant-Appellee Donald Minni*.

PAUL J. VACCA, JR., ESQ., Rochester, NY, *for Defendant-Appellee Scott Demeyer*.

————————————————

HALL, *Circuit Judge*:

In this appeal we consider whether state law enforcement investigators' failure properly to record and seal digital pager electronic interceptions, as prescribed by a state eavesdropping warrant and federal statute, should result in suppression of the pager interceptions and the evidence derived from them.[1] This case comes to us on the government's interlocutory appeal of the November 23, 2005, and February 1, 2006, decisions of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*) which granted Defendants-Appellees' motions to suppress all evidence derived from the New York State pager eavesdropping warrant. In granting the motion to suppress, the district court found that the investigators' failure to record electronically and to seal the pager interceptions rose to the level of a constitutional violation. Although we agree with the district court that federal rather than state law governs, we disagree with the court's disposition of the motion to suppress. The failure properly to record and seal these electronic interceptions is not a constitutional violation that merits suppression under 18 U.S.C. § 2518(10)(c). Rather, the appropriate remedy for a

———————————

[1] This derivative evidence includes conversations captured on subsequent phone wiretaps the warrant for which was obtained using information gleaned from the pager interceptions, as well as incriminating physical evidence seized in the execution of search warrants derived in part from information obtained from the phone wiretaps.

violation of this type is found in the exclusionary remedy contained in 18 U.S.C. § 2518(8)(a).

## BACKGROUND

On March 19, 2002, state police investigators tracking a suspected cocaine distribution conspiracy in Rochester, New York, obtained a thirty-day eavesdropping warrant from Monroe County Court Judge Patricia Marks. The warrant authorized the interception of a digital pager belonging to Joseph Amanuel and used by Donald R. Minni. The terms of the warrant required that "the interceptions will be captured on a computer maintained by the [N]ew York State Police, and the computer system shall make a record of every digital message intercepted from the target pager and all such records will be kept and stored by computer." The warrant further ordered that "any and all electronic communications or fragments thereof which are intercepted and monitored . . . shall be fully and completely listed and recorded in a manner which will protect the records from editing and alteration." The warrant also authorized the monitoring of communications via a duplicate or "clone" paging device, which would display the same information as that shown on the device being monitored. On April 18, 2002, Monroe County Court Judge Richard A. Keenan continued the Order of Authorization for an additional thirty days.

Contrary to the specific electronic recording requirements stated in the eavesdropping warrant, investigators did not record electronically intercepted pager communications on a computer. Instead, an investigator visually monitored the clone pager and entered the intercepted information in a handwritten log. The State submitted eighty-four pages of handwritten logs to Judge Keenan for sealing when the pager interception warrant continuation

3

order expired.

The State then made an *ex parte* application for a wiretap warrant to monitor and record three different cellular phones used by Minni and Amanuel. In support of this request, the State presented Judge Keenan with information obtained during its ongoing investigation, including information obtained from visually monitoring the clone pager. Judge Keenan granted the wiretap application on May 30, 2002, and renewed it on June 7, 2002. In turn, these wiretaps provided information used to support the issuance of search warrants whose execution ultimately resulted in the seizure of incriminating physical evidence.

On November 27, 2002, after the conclusion of the investigation, a Monroe County grand jury returned an indictment charging Rodrique Amanuel, Minni, Scott Demeyer, and others with various drug-related offenses. During the state court proceedings, the defendants each moved to suppress the evidence derived from the improperly recorded pager interceptions. In response, the State explained that an electronic pager recording device had not been available in the Monroe County area at the time of the investigation. The State conceded, however, that such a device had been available in Albany, New York. It offered no explanation as to why the investigators had not used the Albany pager recorder.

New York State Supreme Court Justice Kenneth R. Fisher granted the defendants' motions to suppress evidence from the pager interceptions because the visual monitoring and handwritten logs of the pager interception warrant violated the recording requirements of § 700.35(3) of New York Criminal Procedure Law, which requires that the interceptions "if possible, be recorded on tape or wire or other comparable device." N.Y. Crim. Proc. Law §

4

700.35(3) (McKinney 1995).[2] Justice Fisher then dismissed the indictments against all of the defendants, because all of the evidence in the State's case derived either directly or indirectly from the pager interception warrant.

Following dismissal of the state indictment, federal prosecutors assumed control of the case. On May 19, 2005, a federal grand jury returned an indictment charging Amanuel, Minni, and Demeyer with conspiracy to possess with intent to distribute more than five hundred (500) grams of a substance containing cocaine, in violation of 21 U.S.C. §§ 841 and 846. In the district court, the defendants moved, as they had previously done in state court, to suppress all evidence derived from the March 19, 2002 pager interception warrant.

In November 2005, the district court granted the defendants' motion to suppress both the interceptions and all evidence derived therefrom. *United States v. Amanuel*, 418 F. Supp. 2d 244 (W.D.N.Y. 2005). In granting the defendants' motion, the district court held as an initial matter that in federal court, the use of state wiretap warrants is controlled by federal rather than state law. In applying federal law, the district court ruled that handwritten logs cannot qualify as "sealed" in compliance with 18 U.S.C. § 2518(8)(a). *Id*. at 250-51. The district court further held that the "wholesale disregard of the recording requirement" amounted to "a violation of constitutional magnitude" under 18 U.S.C. § 2518(10)(c) and, therefore, required suppression of all evidence derived from the March 19, 2002 warrant. *Id.* at 249, 252.

The court then considered the Government's motion for reconsideration based on the good faith exception. *United States v. Amanuel*, No. 05-CR-6075, 2006 WL 266560 (W.D.N.Y.

---

[2] As an independent ground for suppression, Justice Fisher also found that the handwritten logs did not comply with the terms of the warrant and, therefore, violated New York Criminal Procedure Law § 700.35(1).

Feb. 1, 2006); *see generally Illinois v. Krull*, 480 U.S. 340 (1987) (holding that the exclusionary rule did not apply to a good-faith violation of the Fourth Amendment by police officers); *United States v. Leon*, 468 U.S. 897 (1984) (same). It held that the exception did not apply because the Government's "willful . . . improper and wrong" violation of the pager interception warrant left the Government without clean hands. *Amanuel*, 2006 WL 266560, at *3.

This appeal followed.

## DISCUSSION

The Government contends that although the district court correctly decided to apply federal rather than state law, the court erred in concluding that the failure properly to record and seal the intercepted electronic communications rose to the level of a constitutional violation. According to the Government, because no constitutional violation occurred, that evidence cannot be suppressed under 18 U.S.C. § 2518(10)(c). In the alternative, the Government argues that even if the evidence from the March 2002 pager interception warrant is suppressed, information obtained from the subsequent warrants is admissible under a good faith exception. Appellees counter that the failure to record and seal the intercepted electronic communications rises to the level of a constitutional violation, and as such, the evidence must be suppressed. They further contend that the good faith exception cannot be relied on to save the subsequent warrants in light of the investigators' willful violation of the requirements of the initial pager interception warrant.

In addition to the arguments raised by the other Appellees, Amanuel contends that this Court's prior rulings require that where state law provides greater protection of privacy rights than does federal law, state law governs the use of state-issued warrants in federal court.

6

Because resolving this issue determines which law we will apply to analyze the issues in this case, we address this argument first.

In *United States v. Sotomayor*, 592 F.2d 1219 (2d Cir. 1979), this Court noted in dicta that a federal court, in determining the admissibility of the fruits of state-issued warrants, need "apply only those more stringent state statutory requirements or standards that are designed to protect an individual's right of privacy." *Id.* at 1225. That conclusion, however, was later rejected by this Court in *United States v. Miller*, 116 F.3d 641 (2d Cir. 1997). In declining to apply state law to the use made of the wiretap warrant at issue in *Miller*, we found that the "interpretive dicta" in *Sotomayor* "have never been applied to bar the introduction of wiretap evidence." *Id.* at 661. Accordingly, we agree with the district court's determination that in this federal case, federal law governs the use of a state-issued eavesdropping warrant.

In reviewing a district court's ruling on a motion to suppress, this court reviews the district courts's conclusions of law *de novo*. *United States v. Gotti*, 459 F.3d 296, 344 (2d Cir. 2006).

## I. Federal Recording and Sealing Requirements

Pager eavesdropping warrants are controlled by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which was amended by Title I of the Electronic Communications Privacy Act of 1986 (the "ECPA") to extend Title III's coverage to electronic communications. The procedures for lawful interception of electronic communications are codified at 18 U.S.C. § 2518, which requires that

> [t]he contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as

7

will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a). Although the statute permits recordings "on tape or wire or other comparable device," it also states that regardless of the means of recording, it shall be conducted in a way that safeguards the recorded communications from editing or alterations. *Id.*

We have not yet considered whether the method of recording at issue in this case—by handwritten transcription in a log book—satisfies the recording requirement of § 2518(8)(a). The Fourth and the Ninth Circuits, however, have determined that it does not. *See United States v. Suarez*, 906 F.2d 977, 983 (4th Cir. 1990) ("[T]ranscribing by hand in a log book the images appearing on a display pager is not recording on a comparable device within the meaning of [§ 2518(8)(a)]."); *United States v. Hermanek*, 289 F.3d 1076, 1089 (9th Cir. 2002) (citing *Suarez* and holding the same). In *Suarez*, the Fourth Circuit explained that the reliability of intercepted electronic communications is guaranteed in two ways: "mechanical recordation as received" and "relatively prompt sealing." *Suarez*, 906 F.2d at 983-84. The "mechanical" means of recording required by the statute "minimize human involvement and limit the opportunity for intentional alteration and human error." *Hermanek*, 289 F.3d at 1089. These protections, inherent in mechanical recordings, safeguard the integrity of the records and cannot be replaced by handwritten logs. Based on that same rationale, we join the Fourth and Ninth Circuits in holding

8

that the handwritten transcription in a log book of images appearing on a display pager is not sufficient to meet the recording requirement of § 2518(8)(a).

Having determined that handwritten transcription fails to meet the recording requirement set out in § 2518(8)(a), we must now consider whether it was "possible" for the State Police to have utilized a proper recording method. As noted earlier, the State conceded that a pager recorder, which would have satisfied the requirements of § 2518(8)(a), was available in Albany, New York—a few hours away from Monroe County by car. Additionally, as noted above, the State offered no explanation for why the investigators had not used the Albany pager recorder. In light of the fact that the investigators could have obtained a proper recording device *and* have supplied no reason why it was not used, we conclude that it was, indeed, possible to record the interceptions "on tape or wire or other comparable device" as required by § 2518(8)(a), and the investigators' failure to do so cannot be excused.

In reviewing the requirements of § 2518(8)(a), we are left to assess whether, after failing to meet the *recording requirement* of the statute, the investigators met the statute's *sealing requirement*, in light of the fact that they submitted their handwritten notes to Judge Keenan for sealing on May 17, 2002. Here, we note that § 2518(8)(a) requires that interceptions "shall, if possible, be recorded on tape or wire or other comparable device . . . . Immediately upon the expiration of the period of the order, or extensions thereof, *such recordings* shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a) (emphasis added). Based upon the plain language of the statute, records that do not comply with the recording requirements of the statute are not susceptible to sealing. In other words, a determination that handwritten transcriptions do not meet the recording requirement

9

requires the further conclusion that the sealing contemplated by the statute simply was not possible. *See Hermanek*, 289 F.3d at 1089 n.5 ("Section 2518(8)(a) requires recordation, where possible, and requires sealing only of '*such* recordings' . . . . The handwritten logs were not recordings; thus, sealing was not required.").

Our reading of the statute is informed by the very purpose of the sealing requirement of § 2518(8)(a). As the Supreme Court stated in *United States v. Ojeda Rios*, 495 U.S. 257, 263 (1990), "the seal is a means of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded." A seal is, in essence, a verification of the integrity of the underlying recordings once those recordings have been submitted to a judge. Because it is already possible that handwritten documents lack integrity because of errors introduced in transcription, or because of intentional alteration, the sealing of such documents is of little purpose. As the Fourth Circuit stated in *Suarez*:

> [Section 2518(8)(a)]'s whole premise is that the evidentiary reliability of particular electronic communications can be ensured by two means: (1) their mechanical recordation as received, which ensures their original integrity; followed by (2) the relatively prompt sealing of the mechanical recordation. In this way, the opportunity for human alterations is completely avoided at the point of interception and minimized thereafter. That premise, hence the statute's intended application, is completely undercut where simultaneous mechanical recordation is impossible, and human alteration made possible in the very act of manual "recordation." The complete futility of any sealing requirement . . . is the best indication that *the statute imposes none*."

*Suarez*, 906 F.2d at 983-84 (emphasis added). Accordingly, if handwritten documents do not meet the recording requirement of § 2518(8)(a), they simply cannot be sealed in accordance with the statute's sealing requirement.

## II. Limitations on Suppression of Electronic Communications

Having determined that the telephone numbers obtained from the interception of the pager have been preserved in a way that does not meet federal requirements, we next consider whether suppression of that evidence and the evidence subsequently obtained from the search warrants that relied in part on that evidence is the appropriate remedy for such a violation.

We note that although the ECPA extends many of Title III's regulations and protections to electronic communications, electronic communications are not covered by Title III's general statutory suppression remedy. *See* 18 U.S.C. § 2518(a). Indeed, 18 U.S.C. § 2518(10)(c) specifically provides that "[t]he remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." As noted in the legislative history of the ECPA, Congress sought to limit suppression of electronic communications to those instances in which the Fourth Amendment has been violated, except where the statute provides an exclusionary remedy in specific circumstances (we discuss one such instance below). The Senate Report comments note:

> subsection 2518(10) of title 18 [was amended] to add a paragraph (c) which provides that with respect to the interception of electronic communications, the remedies and sanctions described in this chapter are the only judicial remedies and sanctions available for nonconstitutional violations of this chapter involving such communications. In the event that there is a violation of law of a constitutional magnitude, the court involved in a subsequent trial will apply the existing Constitutional law with respect to the exclusionary rule.

S. Rep. No. 99-541, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577; H.R. Rep. No. 99-647, at 48 (1986) (same).

The district court held that the government's conduct rose to the level of a constitutional violation and ordered the suppression of the contents of the intercepted communications along

11

with all evidence derived from the intercepted communications.  In determining whether a constitutional violation occurred here, we are aided by the Supreme Court's opinion in *Ojeda Rios*.  There, the Court noted that the recording and sealing requirements of § 2518(8)(a) are designed "to ensure the reliability and integrity of evidence obtained by means of electronic surveillance."  *Ojeda Rios*, 495 U.S. at 263.  Those requirements are evidentiary in nature and were enacted to ensure that the intercepted communications are admissible under the rules of evidence rather than to protect privacy interests.  *See United States v. Clerkley*, 556 F.2d 709, 719 (4th Cir. 1977).

In *Clerkley*, the Fourth Circuit declined to suppress evidence after the agents failed to record it, noting that "[t]here is no indication that § 2518(8)(a) was intended to or could fulfill the same function as exhaustion of investigatory procedures, judicial authorization and review, and minimization in protecting an individual's right to privacy."  *Id.*; *see also United States v. Daly*, 535 F.2d 434, 442 (8th Cir. 1976) (citing to the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968 in finding that the purpose of § 2518(8)(a) is to ensure admissibility of intercepted communications at trial).  We agree.  The failure properly to record communications may result in difficulties in admitting such communications into evidence, but it does not follow that such difficulties result in a constitutional violation.  Indeed, our own Court has indicated that the sealing requirement under § 2518(8)(a) is not a constitutional exclusionary device but is, rather, a statutory safeguard designed to insure the integrity of the evidence.  *See United States v. Ricco*, 566 F.2d 433, 437 n.3 (2d Cir. 1977) ("The sealing requirement is not a 4th Amendment exclusionary device, but a statutory safeguard designed to indicate the necessary reliability of evidence . . . .") (quoting approvingly from appellant's reply brief).

12

In concluding that the government's failure to seal rose to the level of a constitutional violation, the district court relied on a footnote from *United States v. Donovan*, 429 U.S. 413 (1977), which states that the "notice and return provisions [of Title III] satisfy constitutional requirements." *Id.* at 429 n.19. The district court's reliance is misplaced. In *Donovan,* the defendants did not allege a violation of the recording and sealing requirements of § 2518(8)(a), but, rather, that the Government had failed to comply with the "notice and inventory" requirements of § 2518(8)(d). Nor did the defendants allege that the Government's violation of § 2518(8)(d) rose to the level of a constitutional violation. Accordingly, the issue of whether—and when—a violation of § 2518(8)(a) might also be an error of constitutional magnitude was not before the Court in *Donovan*. Further, in the *Donovan* footnote relied on by the district court, the Supreme Court cited to its decision in *Katz v. United States*, 389 U.S. 347 (1967). In *Katz*, the Court reversed the defendant's conviction—based on evidence obtained by agents conducting electronic surveillance of the defendant's telephone conversations—because the agents had not first obtained a warrant authorizing the use of electronic recording devices. The Court observed that, while the agents in that specific case had failed to obtain authorization for the recording, generally "a federal court may empower government agents to employ a concealed electronic device" so long as the warrant authorizing such surveillance "afforded similar protections to those . . . of conventional warrants authorizing the seizure of tangible evidence." *Katz*, 389 U.S. at 355 (alteration in original) (internal quotation marks omitted). According to the Court, "[t]hrough these protections, no greater invasion of privacy was permitted than was necessary under the circumstances." *Id*. (internal quotation marks omitted).

The footnote in *Donovan* and the holding in *Katz* lead to the well-established conclusion

13

that law enforcement authorities seeking to engage in electronic surveillance must comply with the requirements of the Fourth Amendment. Those authorities do not, however, require us to determine that violations of § 2518(8)(a) are *per se* constitutional violations. Given that the purpose of the statute's recording and sealing requirements is to protect the integrity of the evidence, *see Ricco*, 566 F.2d at 437 n.3, and that we have held that a Fourth Amendment claim based on "the violation of the statutory requirement for prompt sealing" would not be "sustainable," *id.* at 436, we cannot conclude that the violations of § 2518(8)(a) in this case automatically rise to the level of constitutional errors.

This does not mean that the failure properly to record and seal could never implicate a privacy right. *See United States v. Paredes-Moya*, 722 F. Supp. 1402, 1408 (N.D. Tex. 1989) ("Because the purpose of [§ 2518(8)(a)] is evidentiary, failure to record is not a ground for exclusion of the wiretap evidence absent an allegation that incriminating statements were taken out of context while omitting related mitigating statements."), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Guerra-Marez*, 928 F.2d 665 (5th Cir. 1991). By itself, however, the failure to record and seal does not rise to the level of a constitutional violation. Here, Appellees focus only on the investigators' recording methods and their resulting inability to seal the evidence obtained. Appellees do not assert that the investigators selectively omitted any mitigating pager communications or otherwise intruded on their Fourth Amendment rights. Under these circumstances, therefore, we conclude that Appellees have failed to demonstrate a constitutional violation.

Absent a constitutional violation, blanket suppression of the intercepted communications and all evidence derived therefrom is inappropriate. There are within Title III, however,

14

remedial provisions that do apply.

## III. Statutory Remedies for Failure to Record and Seal

Section 2518(8)(a) provides a limited exclusionary remedy. It states that "[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefore under subsection (3) of section 2517." Its application thus requires a two-part inquiry: "First we determine whether the government complied with the recordation and sealing requirements. If the government has not complied, we determine whether it offered a 'satisfactory explanation' for its failure to do so." *Hermanek*, 289 F.3d at 1084. Only if the Government fails to satisfy both parts of the inquiry may the evidence be excluded. *See*, *e.g.*, *id.* at 1087-88, 1090 (finding that, although the statute applied, the Government had provided a satisfactory explanation for its failure to comply with the recording and sealing requirements); *see also Suarez*, 906 F.2d at 983 (finding that the statute did not apply because the technology to record intercepted pager communications did not exist).

In this case, as we have held, the evidence of the intercepted pager communications was not sealed in accordance with the statute because handwritten logs are not recordings and thus, cannot be sealed properly—indeed, any such seal placed on the logs would do nothing to insure the integrity or reliability of the information. Moreover, the police could have recorded and properly sealed the pager interceptions had they used the pager recorder available to them in Albany. They did not do so. Nor did the Government provide a "satisfactory explanation" for the officers' failure to record and properly seal the contents of the intercepted electronic communications. The intercepted pager communications themselves, the only physical evidence

15

of which are the transcriptions in the log book, are thus subject to exclusion under § 2518(8)(a).[3]

Although we hold that the documents at issue are not recordings and, for that reason, cannot be properly sealed, their exclusion is still appropriate insofar as they contain the contents of the intercepted communications. In fact, consistent with the language of the statute itself, which specifies that the seal, or a satisfactory explanation for its absence, "shall be a prerequisite for the use or disclosure of *the contents of any* wire, oral, or electronic communication," § 2518(8)(a) (emphasis added), we are applying the exclusionary remedy to the *contents* of the intercepted pager communications. We also observe that precluding admission of these electronic communications under § 2518(8)(a) is consistent with the approach endorsed by the Ninth Circuit:

> [T]he operative portions of [§ 2518(8)(a)] require, as a precondition to admissibility, (1) that the government record intercepted communications where "possible"; (2) that the government present such recordings to the district court to be sealed "[i]mmediately" upon the expiration of the order authorizing the surveillance . . .; and (3), in the absence of compliance with *either* of these requirements, that the government offer a "satisfactory explanation."

*Hermanek*, 289 F.3d at 1084 (emphasis added).

We turn now to discuss the type of use and disclosure that must be precluded. While § 2518(8)(a) prohibits the use of the pager communications, it is only the use of such communications as would be allowed under § 2517(3) that will be barred by failure to comply with the sealing requirements. *See United States v. Carson*, 52 F.3d 1173, 1186 (2d Cir. 1995)

---

[3] In addition to exclusion under § 2518(8)(a), defendants may be able to avail themselves of the civil remedies provided in 18 U.S.C. § 2520, which provides that "any person whose . . . electronic communication is intercepted . . . in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate," including damages, punitive damages, "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(a) and (b).

("By its terms, the sealing requirement applies only to subsection (3) of section 2517 and not to subsection (2) or (1)."). The prohibition against their use, therefore, does not apply to nontestimonial uses. *Ricco*, 566 F.2d at 435 (citing *United States v. Fury*, 554 F.2d 522, 531-32 (2d Cir. 1977)). Subsection (3) of § 2517 provides that evidence of intercepted communications may be disclosed "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or any State or political subdivision thereof." Subsections (1) and (2), by contrast, authorize other uses of intercepted wire, oral and electronic communications:

> (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

> (2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

18 U.S.C. § 2517(1)-(2). It is subsections (1) and (2) that provide the authorization to use intercepted electronic communications for purposes of establishing probable cause in support of, *inter alia*, subsequent wiretap warrants, other search warrants, and arrest warrants. And our case law is clear that the prohibition on the use of improperly sealed evidence in sworn testimony will not preclude the use of such evidence either to pursue an investigation or to prove up the fruits of such investigation at trial. *United States v. Donlan*, 825 F.2d 653, 656 (2d Cir. 1987) (noting that "Congress clearly intended" that law enforcement officers be able to use "untimely sealed conversations in testifying before a judicial officer to obtain an arrest or search warrant"). In

17

other words, "the prohibition in subsection 2518(8)(a) on derivative use at trial of improperly sealed tapes is not to be applied strictly to prohibit use of all evidence that can be connected through a chain of causation to a wiretap tainted by improper sealing." *Id*. at 657.

The exclusionary remedy in § 2518(8)(a) applies to the unsealed interceptions at issue in this case. As the pager wiretap evidence before us violated the recording and sealing requirements, the proper remedy to address those errors is the prohibition of the use of those interceptions in ways that would otherwise be permitted by § 2517(3). In this regard, the district court did not err in concluding that the Government is prohibited from offering testimony—at trial or in any other proceeding—regarding the contents of the pager interceptions. The remedy of exclusion provided for in § 2518(8)(a) does not, however, apply to preclude the use of those interceptions in ways authorized under subsections (1) and (2) of § 2517. Accordingly, the Government is not prohibited from offering evidence obtained through warrants that were based on the pager interceptions. That use of the tainted wiretap evidence does not fall under § 2517(3) and, thus, is not affected by the exclusionary remedy in § 2518(8)(a). The pager wiretap evidence before us, though inadmissible, was not obtained in violation of the Constitution and, therefore, the fruits derived from that evidence may not be suppressed.[4]

### CONCLUSION

For these reasons, we VACATE the district court's suppression order and REMAND the case for further proceedings in accord with this opinion.

---

[4] Given our ruling that the Government is not prohibited from introducing evidence obtained through warrants supported by the pager interceptions, we need not address the Government's argument that this evidence is subject to the good-faith exception to the warrant requirement.